# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

records and information associated with the cellular telephone assigned call number 262-393-9247, ("the Account"), that are stored at premises controlled by Metro PCS ("the Provider"), headquartered at Richardson, Texas

)
)
)
)
)
)
)

Case No. 18-915M(NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:   Title 18, United States Code, Section 2119(1) and
Title 18, United States Code, Section 924(c)

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

TFO William Sheehan, FBI
*Printed Name and Title*

Sworn to before me and signed in my presence:
Date: September 11, 2018

_____
Judge's signature

City and State: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed Name and Title*

Case 2:18-mj-00915-NJ   Filed 11/06/18   Page 1 of 14   Document 1

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, William Sheehan, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 262-393-9247, ("the SUBJECT PHONE"), that is stored at premises controlled by Metro PCS, a wireless telephone service provider headquartered at Richardson, Texas. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Metro PCS to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I have been a detective with the Milwaukee Police Department over 19 years. I am currently assigned to the FBI's Violent Crime Task Force as a federally deputized Task Force Officer. During my career in law enforcement, I have participated in violent crime investigations, including armed robberies, carjackings, kidnappings, extortions, murder for hire, bank and armored car robberies.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, There is probable cause to believe that UDELL L. PUGH (DOB XX/XX/1999) committed the carjacking of D.H. on April 21, 2018, in

violation of Title 18, United States Code, Section 2119(1) (Motor Vehicle Robbery), and used a firearm during a crime of violence, in violation of Title 18, United States Code, Section 924(c). On June 5, 2018, a grand jury in the Eastern District of Wisconsin indicted Pugh on these charges. A warrant for his arrest issued the next day. Pugh has been a federal fugitive since that date. There is probable cause to believe that Pugh is aware of these charges and is evading law enforcement detection. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting Pugh, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## PROBABLE CAUSE

### *BACKGROUND – CARJACKING*

5. On April 21, 2018, at approximately 11:50 a.m., D.H. was robbed of her black 2005 Mazda 3 with license plate MV 1585. This vehicle had previously been transported in interstate commerce. D.H. told officers that she had driven to 6141 W. Appleton Avenue to meet with a woman to purchase a wig. D.H. parked in the alley behind the location to wait for the woman. While D.H. waited in her Mazda, a young black male approached D.H. and asked to use D.H.'s phone. D.H. told the suspect "no." The suspect then produced a dark-colored revolver from his hooded sweatshirt pocket and pointed it at D.H. The suspect said, "Bitch, get out or I am going to shoot you!" D.H. exited the car and the suspect got into the driver's seat. D.H. ran around the car, opened the passenger door, and pleaded with the suspect not to take her car. The suspect placed the car in reverse, accelerated, and struck an SUV and a utility pole. While the suspect did this, D.H. was partially on the passenger seat and was thrown from the vehicle and knocked to the ground. The suspect placed the vehicle into drive and fled from the alley. D.H. saw the suspect

2

drive eastbound on W. Appleton Avenue. D.H. flagged down a police officer on a motorcycle and told him what happened.

6.  A witness, S.V. saw the carjacking. S.V. saw a black female (D.H.) on the passenger side of a dark-colored vehicle. He saw the car back up, striking an SUV and a utility pole. According to S.V., it appeared that the driver was trying to hit the black female with the car. When the car struck the utility pole, S.V. saw the female get catapulted from the car. The car then drove eastbound on Appleton.

7.  Soon after the carjacking, officers were dispatched to St. Joseph's Hospital regarding another strong armed robbery complaint. The "victim" was Udell Pugh. Pugh had sustained a very serious injury to his left ankle and was being treated at St. Joseph's Hospital and then at Froedtert Hospital. Security personnel alerted officers that Pugh had arrived as the driver and sole occupant of a black Mazda 3 with license plate MV 1585, D.H.'s stolen car. St. Joseph's Hospital is about 0.7 mile from the carjacking location.

8.  The hospital surveillance footage reflected that at approximately 11:54 a.m., about four minutes after the carjacking, Pugh arrived at the hospital, driving D.H.'s stolen Mazda. He entered the parking lot from the west. In the footage, the driver's door is open as the vehicle speeds through the parking lot. Pugh, the only occupant, left the car running near the entrance doors and limped into the hospital. Pugh was wearing a black hooded sweatshirt/jacket, a black winter hat, blue jeans, consistent with D.H.'s description of the suspect's clothing. Upon examining the vehicle, officers noticed that the door was wedged open due to some type of collision, consistent with Pugh's collision with the pole in the alley after robbing D.H. of the car. Officers recovered a Smith & Wesson (dark-colored) .32 caliber revolver (with serial # 172458)

3

on the front passenger seat of the vehicle. The revolver was loaded with five rounds of ammunition.

9. Pugh provided multiple different versions of the "armed robbery" of which he claimed to be the victim. Essentially, he claimed that around 12:00 or 12:15 (he was unsure of time) he was waiting for a bus on either the 4400 or 4500 block of Burleigh. He did not remember which side of the street or which direction he intended to travel. While waiting for the bus, three suspects robbed him. One had a rifle and the other two had handguns. They dragged him into the back seat of a Mazda. At some point during the encounter, his foot hit the back seat door frame causing the deep avulsion. Pugh stated he was bleeding in the back seat. The driver then drove off with Pugh and another suspect in the back seat. From the back seat, Pugh bit the driver, the driver stopped the car, and all three suspects exited the car. Pugh then moved from the rear of the car to the driver's seat and drove himself to the hospital. Pugh did not know exactly where he was when he switched spots in the car or which direction he took to get to the hospital. Pugh admitted he had a phone on him, but couldn't explain why he didn't call 911.

10. Pugh's version of events contradicted the evidence recovered and observed by officers during the investigation. First, the back seat of the Mazda had so much stuff in it that it would be impossible for two people to fit and there was no evidence of a struggle in the back seat. There was blood on the left side of the driver's seat and on the frame around the driver door, but no blood anywhere else in the car. The car had extensive damage to the driver's side door, door frame, and front quarter panel. The damage was consistent with the suspect backing the car into a telephone pole while the door was still open. There was also damage to the front passenger door consistent with the suspect hitting a parked car as he was fleeing from the carjacking scene.

4

11. A couple hours after the carjacking, D.H. was shown a photo line-up that included a photo of Udell Pugh. D.H. identified Pugh as the man who carjacked her.

12. On March 13, 2018, a state criminal complaint was filed against Pugh for Possession of a firearm after having been adjudicated delinquent. *See* Milwaukee County Circuit Court Case Number 2018CF0001165. On March 14, 2018, Pugh appeared in Milwaukee County Circuit Court and posted a cash bond. Then, on March 28, 2018, Pugh appeared at his initial appearance. Defendant failed ot appear on April 24, 2018 for a scheduling conference because he was in the hospital for the aforementioned injury to his ankle. Eventually, after Pugh failed to appear at two subsequent hearings, the state court judge issued a bench warrant.

13. On May 2, 2018, a state felony arrest warrant was issued after Pugh was charged in Milwaukee County Circuit Court with the aforementioned carjacking. Pugh has never appeared in that case.

14. Pugh was discharged from St. Joseph's hospital without arrest on the outstanding warrants.

15. On May 31, 2018, Pugh was arrested at 4919 N. 26th Street for Child Abuse Intentionally after striking his juvenile sister multiple times in the head and biting her on the chin. At that time, Pugh was in a wheelchair. Instead of being transported to the Milwaukee County Jail, Pugh was taken to St. Joseph's Hospital because his leg showed signs of infection. Pugh was discharged from the hospital and never arrested on the outstanding warrants.

16. On June 5, 2018, a grand jury in the Eastern District of Wisconsin indicted Pugh on charges of motor vehicle robbery, in violation of Title 18, United States Code, Section 2119(1), and use of a firearm during a crime of violence, in violation of Title 18, United States Code, Section

924(c). A warrant for Pugh's arrest issued the next day. Pugh has been a federal fugitive since that date.

## *EFFORTS TO LOCATE UDELL PUGH*

17. In early June 2018, a law enforcement officer went to St. Joseph's Hospital and learned the Pugh had been discharged. The officer went to 4919 N. 26th Street in Milwaukee, WI in search of Pugh. The officer spoke with Pugh's other sister, K.B., who reported that Pugh was not allowed back at that residence because of the incident on May 31, 2018 involving the assault to K.B.'s juvenile sister.

18. On August 22, 2018, officers went to a residence at 4315 N. 88th Street, upper unit, in search of Pugh. Pugh had incoming text messages on his phone telling him to change his address to the residence on N. 88th Street. Officers found the upper unit to be vacant, and did not locate Pugh at this residence. The lower tenants reported that two females, Astavia and Margarita, previously lived in the upper unit. The tenants stated that Astavia was dating a black male who had recently been walking with a limp. Police records showed that Astavia Baxter and Margarita Acosta lived at the upper unit of N. 88th Street.

19. Subsequently, officers went to 4919 N. 26th Street and spoke with Pugh's sister, K.B. K.B. reported that Pugh was not living there and was living with Astavia. K.B. claimed that she did not know where Astavia was living.

20. MPD records showed the Astavia's mother lives at 6420 Moltke Avenue in Milwaukee. On August 22, 2018, officers went to Astavia's mother's house. Astavia's mother reported that she had last spoken to Astavia three days earlier. Astavia wanted to pick up pots and pans for Astavia's new apartment on Nicholson Avenue. Astavia's mother identified Pugh as

Astavia's boyfriend. Astavia's mother reported that Pugh has been violent toward Astavia and had damaged Astavia's car and cut her hair.

21. Margarita Acosta is listed for the utilities for 2415 Nicholson Avenue, Building 510, Apartment #3, in South Milwaukee, WI. However, the building manager reported that Margarita Acosta had moved into 2415 Nicholson Avenue, Building 590, Apartment #3, on August 16, 2018. Officers confirmed that Acosta lived in Building 590, not Building 510 as listed on the utilities.

22. On August 22, 2018, officers went to 2415 Nicholson Avenue, Building 590, Apartment #3, in search of Pugh. Before anyone answered the door, an officer heard a female say, "they must be here for us because there's only old people in this building." Then, an indistinquishable voice said something about "hiding." Eventually, Margarita Acosta answered the door. She quickly squeezed herself outside the unit and closed the door, preventing officers from seeing who was in the unit. Acosta denied that Udell Pugh was in the unit and denied that she knows him. Acosta said that Astavia and Astavia's juvenile daughter live there. Acosta claimed that the only person in the apartment at the time was Astavia's 9 or 10-year old daughter. Acosta refused to allow officers to enter the unit.

23. Officers interviewed neighbors, one who lives in the same building and another who lives in the same apartment complex. The two neighbors identified Udell Pugh as someone they had seen at the building four or five days earlier.

24. On the afternoon of August 22, 2018, officers obtain a search warrant signed by the Honorable Magistrate Judge David E. Jones authorizing the search of 2415 Nicholson Avenue, Building 590, Apartment #3, in South Milwaukee, to look for Pugh. Officers executed the search warrant and did not find Pugh within the apartment unit.

7
Case 2:18-mj-00915-NJ   Filed 11/06/18   Page 8 of 14   Document 1

25. However, the building manager reported that the evening of the search (August 22, 2018) at approximately 5:00 p.m., he heard a female talking on the phone within Apartment #3. The female said something to the effect of you keep lying, they were here. The building manager suspected that the female was talking to the person for whom law enforcement was searching that afternoon, Udell Pugh.

26. Law enforcement obtained toll records for Astavia's telephone number, 262-393-9247. Officers obtained this phone number from Astavia's mother. Metro PCS is the provider for this number. The toll records show that between June 30, 2018 and August 24, 2018, Astavia had 4,403 contacts with telephone number 414-366-7106. Upon searching publicly viewable records on Facebook, law enforcement determined that telephone number 414-366-7106 is associated with a Facebook account with username "Dee Chasin Amillion." I observed two photos associated with this Facebook account. One photo is a cover photo that shows a selfie-style picture of a young black male. I compared the Facebook cover photo with a known photo of Udell Pugh and believe that they are the same person. I also observed another selfie-style photo that is labeled a profile picture for the Facebook account. I compared the young male in the Facebook profile picture with the known photo of Udell Pugh and I believe that they are the same person.

27. On or about August, 30, 2018, I obtained a search warrant for the current location information for telephone number 414-366-7106. The records have not proved to be fruitful since the phone is not in use.

28. On or about September 10, 2018, law enforcement received a call from one of Astavia's relatives indicating that Astavia continues to have contact with Pugh.

29. Based upon the foregoing, I believe that there is probable cause that Astavia Baxter is aware that Pugh is a fugitive and is assisting Pugh with evading law enforcement detection. I

8

further believe that by obtaining toll records and location information, including cell site information, for Astavia Baxter's telephone number 262-393-9247, law enforcement will be able to better ascertain Pugh's whereabouts.

30. In my training and experience, I have learned that Metro PCS is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

31. Based on my training and experience, I know that Metro PCS can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as Metro PCS typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

32. Based on my training and experience, I know that wireless providers such as Metro PCS typically collect and retain information about their subscribers in their normal course of

9

business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Metro PCS typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

33. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

34. I further request that the Court direct Metro PCS to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Metro PCS, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number 262-393-9247, ("the Account"), that are stored at premises controlled by Metro PCS ("the Provider"), headquartered at Richardson, Texas.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period August 1, 2018 to the Present:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

   i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that may assist law enforcement in locating Udell Pugh, who is currently a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4), for violations of 18 U.S.C. §§ 2119(1) and 924(c) during the period August 1, 2018 to the Present.